UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY J. GIZZI and KERRY GIZZI, husband and wife,<br><br>　　　Plaintiffs,<br>vs.<br><br>CHALLENGER MOTOR FREIGHT, INC.<br><br>and<br><br>MARTIN RIESS,<br><br>　　　Defendants. | CIVIL DIVISION<br><br>No.<br><br>Code: 001<br><br>**COMPLAINT IN A CIVIL ACTION**<br><br>Filed on behalf of Plaintiffs:<br>JEFFREY J. GIZZI and KERRY GIZZI<br><br>Counsel of Record for These Parties:<br><br>MICHAEL H. ROSENZWEIG, ESQUIRE<br>E-mail address: mrosenzweig@edgarsnyder.com<br>PA I.D. No. 41248<br><br>CHRISTOPHER T. HILDEBRANDT, ESQUIRE<br>E-mail address: childebrandt@edgarsnyder.com<br>PA I.D. No. 82002<br><br>Firm No. 1605<br><br>EDGAR SNYDER & ASSOCIATES, LLC<br>US Steel Tower, 10th Floor<br>600 Grant Street<br>Pittsburgh, PA  15219-2705<br>412-394-1000<br>**JURY TRIAL DEMANDED** |

#2291144

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY J. GIZZI and KERRY GIZZI, husband and wife,<br><br>    Plaintiffs,<br>vs.<br><br>CHALLENGER MOTOR FREIGHT, INC.<br><br>and<br><br>MARTIN RIESS,<br><br>    Defendants. | ) CIVIL DIVISION<br>)<br>) No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT IN A CIVIL ACTION**

AND NOW, come Plaintiffs, JEFFREY J. GIZZI and KERRY GIZZI, husband and wife, by and through their attorneys, EDGAR SNYDER & ASSOCIATES LLC, MICHAEL H. ROSENZWEIG, ESQUIRE and CHRISTOPHER T. HILDEBRANDT, ESQUIRE and file the following Complaint in a Civil Action, respectfully averring as follows:

### **PARTIES**

1. Plaintiffs, Jeffrey J. Gizzi and Kerry Gizzi, husband and wife, are adult individuals who reside at 541 Center Hill Road, Pittsburgh, Allegheny County, Pennsylvania. Plaintiffs are citizens of the Commonwealth of Pennsylvania.

2. Defendant, Challenger Motor Freight, Inc., is an entity of unknown precise legal identity, with offices and a regular place of business located at 300 Maple Grove Road, Cambridge, Ontario, Canada. Defendant is a citizen of Canada.

#2291144

3.  Defendant, Martin Riess, is an adult individual who resides at 3 Buell Street, Brockville, Ontario, Canada. Upon information and belief, Defendant Riess is a citizen of Canada.

## STATEMENT OF JURISDICTION

4.  This case is brought under 28 U.S.C. § 1332(a)(1), based upon diversity of citizenship. Because Plaintiffs are citizens of the Commonwealth of Pennsylvania, Defendants are citizens of Canada, and the amount in controversy (exclusive of interest and costs) exceeds $75,000.00, diversity jurisdiction exists in this Honorable Court.

5.  Venue is appropriate in the United States District Court for the Western District of Pennsylvania since the incident which forms the basis for this Complaint occurred in Allegheny County, Pennsylvania, as is further described herein below.

## STATEMENT OF CLAIM

6.  The incident complained of herein occurred on February 19, 2016 at approximately 9:30 A.M. at Siemens Industry's Sagamore Hill Facility, located at 100 Sagamore Hill Road, Pittsburgh, Allegheny County, Pennsylvania.

7.  At all times material hereto, Defendant Challenger Motor Freight, Inc. ("Challenger") was engaged in the distribution and trucking of freight and other materials within the Commonwealth of Pennsylvania, and operated a fleet of tractors and trailers that were used to transport freight and other materials on the public highways of the Commonwealth of Pennsylvania.

8.  Defendant Challenger operated the fleet of tractors and trailers under authority issued to it by the United States Department of Transportation, and is registered with the Federal Motor Carrier Safety Administration with a USDOT number of 247765.

#2291144

9. At all times material hereto, Plaintiff Jeffrey Gizzi was an employee of Siemens Industry and was working in the course and scope of his employment with Siemens Industry.

10. At all times material hereto, Defendant Martin Riess was acting as the agent, servant and/or employee of Defendant Challenger.

11. On or about February 19, 2016, Defendant Riess was operating a tractor and flatbed trailer, upon which was loaded a large electrical transformer.

12. The large electrical transformer was transported by Defendants Challenger and Riess to Siemens Industry's Sagamore Hill Facility.

13. At the aforesaid time and place, Plaintiff Jeffrey Gizzi was standing on a ladder, which had been placed on the flatbed trailer, preparing the large electrical transformer for repositioning from the center of the flatbed trailer to the rear of the flatbed trailer.

14. Without warning or notice, Defendant Riess began to move the tractor and flatbed trailer forward, causing the large electrical transformer to shift, thereby striking the ladder upon which Plaintiff Jeffrey Gizzi was standing, causing Plaintiff Jeffrey Gizzi to be thrown to the ground.

15. As a direct and proximate result of the aforesaid incident, Plaintiff Jeffrey Gizzi suffered the following injuries, some or all of which may be permanent in nature:

    a. Left-sided highly communited intra-articular olecranon fracture;

    b. Left-sided comminuted radial head fracture with displaced intra-articular fracture fragments;

    c. Left-sided acute fractures of proximal radius and ulna with intra-articular extension and apparent posterior dislocation of both bones from the humerus;

    d. Right-sided comminuted radial head fracture with medially displaced intra-articular fracture fragments;

#2291144

e. Right-sided lateral subluxation of the radial head with respect to the capitellum;

f. Right-sided avulsion fracture of the coronoid process with anterior subluxation of the trochlea;

g. Right-sided nondisplaced impaction fractures involving the trochlea and capitellum;

h. Right-sided posterior elbow dislocation with acute fracture of the proximal ulna;

i. Bilateral soft tissue swelling of the elbow joint;

j. Closed reduction with manipulation of bilateral elbows;

k. Open reduction and internal fixation of the left olecranon transarticular fracture-dislocation with reduction of the radius/proximal radio-ulnar joint;

l. Open reduction and internal fixation of the left proximal ulna;

m. Open reduction and internal fixation of the left ulna shaft;

n. Open reduction and internal fixation of the right acute, unstable elbow dislocation;

o. Open reduction and internal fixation of the right proximal ulna/radius fracture-dislocation;

p. Right-sided lateral collateral ligament repair;

q. Bilateral open reduction and treatment of the lateral humeral condyle fractures;

r. Bilateral open reduction and internal fixation of the radial head fracture-dislocation with prosthetic placement;

s. Bilateral elbow joint arthrotomy;

t. Loss of range of motion of bilateral upper extremities;

u. Bilateral upper extremity pain;

v. Laceration over bridge of nose;

w. Laceration over the left eyebrow;

5

      x.      Severe shock, strain or sprain of the nerves, muscles, tissues, ligaments and vessels of the musculoskeletal system; and

      y.      Other serious and severe injuries as the medical records may reveal or which have yet to be diagnosed.

16. As a further direct and proximate result of the aforesaid collision, Plaintiff-Husband has been and will be obliged to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be obligated to expend such sums or incur such expenditures for an indefinite time into the future.

17. As a further result of this incident, Plaintiff-Husband has suffered severe physical pain, mental anguish, humiliation, embarrassment, fright, loss of enjoyment of life, loss of vitality, vigor, health and/or strength and will continue to suffer the same for an indefinite time into the future.

18. As a further result of this incident, Plaintiff-Husband suffered a loss of earnings and/or impairment of earning capacity and power which may be permanent.

19. As a further direct and proximate result of the aforesaid incident, Plaintiff-Husband has sustained or may sustain cosmetic disfigurement in the future.

20. As a further direct and proximate result of this incident, Plaintiff-Wife, Kerry Gizzi, has been damaged and deprived of the society, comfort, companionship, services and consortium of her husband, Plaintiff-Husband, Jeffrey Gizzi.

## **FIRST CAUSE OF ACTION**

### *Negligence of Martin Riess*

21. Plaintiffs incorporate all facts and allegations above into this cause of action by reference.

22. The aforesaid February 19, 2016 incident, and the injuries and damages suffered by Plaintiffs, were a direct and proximate result of the negligence, carelessness and wantonness of Defendant Martin Riess generally and in the following particulars:

    a. In operating the tractor-trailer truck while being inattentive;

    b. In failing to operate the tractor-trailer truck free of distractions;

    c. In operating the tractor-trailer truck when Defendant was in such mental and/or physical condition that it was not safe for him to do so;

    d. In operating the tractor-trailer truck in such a manner as to cause and/or permit Plaintiff-Husband to fall from the flatbed trailer to the ground;

    e. In operating the tractor-trailer truck when Defendant did not know if his load was secured;

    f. In operating the tractor-trailer truck when Defendant did not have Plaintiff-Husband in his line-of-sight;

    g. In operating the tractor-trailer truck in a forward direction without proper authorization;

    h. In operating the tractor-trailer truck in such a manner as to cause the load to shift;

    i. In operating the tractor-trailer truck in such manner as to cause Plaintiff-Husband to be thrown to the ground;

    j. In operating the tractor-trailer truck in a forward direction when Defendant knew or should have known it was not safe to do so;

    k. In operating the tractor-trailer truck in a forward direction when Defendant knew or should have known that to do so would cause Plaintiff-Husband to fall to the ground;

    l. In operating the tractor-trailer truck in such a manner that Defendant knew or should have known that the load would shift, causing Plaintiff-Husband to fall to the ground;

    m. In failing to take any action to avoid moving the tractor-trailer prior to proper authorization from Siemens Industry employees, including Plaintiff-Husband;

n. In failing to confirm with Siemens Industry employees, including Plaintiff-Husband, that it was safe to operate the tractor-trailer in a forward direction prior to doing so;

o. In failing to place restrictive devices, such as chocks and/or blocks, in front of and/or behind the wheels of the tractor and trailer to assure that the tractor-trailer truck would not move without notice;

p. In failing to mechanically secure the tractor-trailer to the loading dock;

q. In failing to utilize glad hand locks to assure that the trailer would not move without notice;

r. In failing to timely, promptly and/or properly apply the brakes or other stopping devices of the tractor-trailer truck so that Plaintiff-Husband would not be thrown to the ground;

s. In failing to take all reasonable and necessary measures to avoid moving the tractor-trailer truck without notice to Plaintiff-Husband;

t. In failing to secure clearance to move the tractor-trailer truck from Siemens Industry employees, including Plaintiff-Husband, prior to operating the tractor-trailer truck in a forward direction;

u. In failing to keep and maintain the tractor-trailer truck under proper and adequate control;

v. In failing to observe, or timely observe, Plaintiff-Husband before operating the tractor-trailer truck in a forward direction;

w. In failing to keep a safe, careful and adequate lookout for people on or around the tractor-trailer truck, including Plaintiff-Husband;

x. In failing to continually observe Plaintiff-Husband before operating the tractor-trailer truck in a forward direction;

y. In failing to maintain a clear line of communication with Siemens Industry employees, including Plaintiff-Husband, during the unloading process;

z. In failing to inquire about the details of the unloading process prior to operating the tractor-trailer truck in a forward direction;

aa. In failing to sound a horn or otherwise give warning to Plaintiff-Husband before operating the tractor-trailer truck in a forward direction;

bb. In operating the tractor-trailer truck without proper training, sufficient experience and/or adequate qualifications to safely control the tractor-trailer truck during the unloading process;

#2291144

cc. In operating the tractor-trailer truck when Defendant knew or should have known that the tractor-trailer truck was improperly maintained, dangerous or unsafe;

dd. In failing to inspect, repair, service and/or otherwise maintain the tractor-trailer truck in a safe and proper working condition such that failure to do so resulted in the vehicle being unsafe and dangerous; and

ee. In violating the ordinances, laws and statutes of the Commonwealth of Pennsylvania and/or United States Department of Transportation and/or United States Department of Labor as aforesaid relative to the safe operation and unloading of commercial motor vehicles.

23. The aforesaid incident and the injuries and damages suffered by Plaintiffs were a direct and proximate result of the aforesaid negligence, carelessness and wantonness of Defendant Riess.

24. Defendant Riess breached the duty of care owed to Plaintiff Jeffrey Gizzi.

## SECOND CAUSE OF ACTION

### *Negligence of Challenger Motor Freight, Inc.*

25. Plaintiffs incorporate all facts and allegations above into this cause of action by reference.

26. At all times relevant, Defendant Challenger acted by and through its officers, directors, agents, servants and/or employees who all acted within the scope and course of their duties, agency and/or employment and on behalf of and for the benefit of Defendant Challenger.

27. At the time of the aforesaid February 19, 2016 incident, Defendant Riess was acting as an agent, servant and/or employee of Defendant Challenger, and acting within the scope and course of his duties, agency and/or employment and furthering his employer's interests and was under the control of Defendant Challenger.

28. The aforesaid February 19, 2016 incident was a direct and proximate result of the negligence, carelessness and wantonness of Defendant Challenger's tractor-trailer truck driver, Defendant Riess, who was negligent as aforesaid.

29. Defendant Challenger is liable to Plaintiffs for the aforesaid acts, conduct, omissions, negligence, carelessness and wantonness of Defendant Riess under the doctrines of vicarious liability, respondeat superior and/or master/servant responsibility.

30. Further, the aforesaid incident was a direct and proximate result of the direct negligence, carelessness and wantonness of Defendant Challenger who was negligent as follows:

    a. In failing to establish and/or enforce safe, proper and/or reasonable and adequate guidelines regulations and/or instructions for its agents, servants and/or employees, including Defendant Riess, regarding the unloading of it tractor-trailer trucks;

    b. In failing to establish and/or enforce safe and proper guidelines, regulations and/or instructions regarding the operation of its vehicles by its agents, servants and/or employees, including Defendant Riess, for transporting material by tractor-trailer;

    c. In failing to establish and/or enforce procedures to ensure that the tractor-trailer truck, operated by its agents, servants and/or employees, including Defendant Riess, are operated in a manner safe for transporting materials by tractor-trailer truck on public highway and free of distractions;

    d. In failing to properly and/or adequately train or retrain its agents, servants, and/or employees, including Defendant Riess, to inspect, maintain and operate the tractor trailer in a safe manner such that during the unloading process, the load does not shift without notice to those people unloading the tractor-trailer;

    e. In failing to timely, adequately, and/or properly inform, instruct, teach and/or adequately train or retrain its agents, servants, and/or employees, including Defendant Riess, to inspect, maintain and operate the tractor trailer, in such a manner that the tractor-trailer truck operator does not move the tractor-trailer truck during the unloading process without notice to those people unloading the trailer;

    f. In failing to discipline and/or superintend, or adequately, properly and/or sufficiently discipline and superintend its agents, servants and/or employees, including Defendant Riess;

#2291144

g. In failing to enforce its own policies and procedures regarding the instruction, training, education, testing, supervision, management, and/or discipline of its agents, servants and/or employees, including Defendant Riess;

h. In failing to properly and/or adequately supervise the operations and/or management of its agents, servants and/or employees, including Defendant Riess;

i. In negligently entrusting the vehicle to Defendant Riess, when the Defendant Challenger knew, or should have known, that Defendant Riess was not capable of safely operating the tractor-trailer truck;

j. In negligently entrusting the vehicle to Defendant Riess, when the Defendant Challenger knew, or should have known, that Defendant Riess was not capable of safely operating the tractor-trailer truck during the unloading process;

k. In allowing or entrusting the tractor-trailer truck to be operated by an improperly trained and/or unqualified individual or a truck driver prone to distraction;

l. In failing to adopt and/or enforce driver rules and regulations requiring that the tractor-trailer truck be operated free of distractions;

m. In failing to adopt and/or enforce driver rules and regulations regarding truck drivers' hours in service;

n. In failing to adopt and/or enforce driver rules and regulations prohibiting truck drivers from operating tractor trailer while fatigued or without adequate rest;

o. In allowing the tractor-trailer truck to be operated by an individual who was not free of distractions that interfered with the safe operation of the tractor-trailer truck, which tractor-trailer truck required a commercial licensed driver to give full and proper attention to the unloading process;

p. In knowingly directing, ordering and/or permitting the tractor-trailer truck to be operated by Defendant Riess, who lacked proper qualification and/or fitness to safely operate the vehicle;

q. In knowingly directing, ordering and/or permitting the tractor trailer to be operated by Defendant Riess, who was without proper training, sufficient experience and/or adequate qualification in the unloading of the specific load being delivered to Siemens Industry at the time of the incident;

r. In failing to properly and/or adequately supervise the actions of its agents, servants and/or employees, including Defendant Riess;

11

  s. In failing to properly and/or adequately instruct, train, retrain, educate, observe, manage, superintend and/or supervise its agents, servants and/or employees, including Defendant Riess, as to safe transportation of materials by tractor-trailer on interstate state highways, including the unloading process;

  t. In failing to timely, properly, fully and/or adequately discipline its employees;

  u. In operating the tractor-trailer truck on the public highway when Defendant Challenger knew, or should have known, that the tractor-trailer truck was improperly maintained, dangerous and/or unsafe;

  v. In failing to timely adopt, enforce and superintend adequate and proper rules and regulations to ensure that the tractor-trailer truck was properly inspected, serviced and/or maintained for delivery of the specific load involved in the incident;

  w. In failing to exercise that degree of care and caution required of a trucking company transporting materials on the public highways as set forth herein, where Defendant Challenger's failure to do so created a hazard and/or danger to Plaintiff-Husband during the unloading process;

  x. In allowing the tractor-trailer truck to be unloaded when Defendant Challenger knew, or should have known, that the tractor-trailer truck was unsafe because of overuse, overloading, improper maintenance, improper loading and/or unloading, and/or inadequate inspection;

  y. In allowing individuals without proper training, sufficient experience and/or adequate qualification in unloading procedures to operate the tractor trailer;

  z. In failing to provide its driver with the necessary devices, including but not limited to chocks, blocks and glad hand locks, to assure that the unloading process would be safe; and

  aa. In violating the ordinances, laws and statutes of the Commonwealth of Pennsylvania Motor Vehicle Code and/or United States Department of Transportation and/or Untied States Department of Labor as aforesaid relative to the safe operation and unloading of commercial motor vehicles.

31. The aforesaid incident and the injuries and damages suffered by Plaintiffs were a direct and proximate result of the aforesaid negligence, carelessness and wantonness of Defendant Riess.

32. Defendant Riess breached the duty of care owed to Plaintiff Jeffrey Gizzi.

## THIRD CAUSE OF ACTION

### *Vicarious Liability of Defendant Challenger Motor Freight, Inc.*

33. Plaintiffs incorporate all facts and allegations above into this cause of action by reference.

34. At all relevant times, Defendant Riess was the employee, agent, servant, or independent contractor for Defendant Challenger. Accordingly, Defendant Challenger is vicariously liable for the acts of Defendant Riess described in the causes of action hereinabove.

35. Regardless of the employment or agency relationship, Defendant Challenger is an interstate motor carrier responsible for the acts of Defendant Riess, its tractor-trailer truck operator.

## FOURTH CAUSE OF ACTION

### *Strict Liability of Defendant Challenger Motor Freight, Inc.*

36. Plaintiffs incorporate all facts and allegations above into this cause of action by reference.

37. Defendant Challenger Motor Freight, Inc. is the registered owner of USDOT number 247765 displayed on the tractor-trailer truck involved in this incident and is therefore responsible for the acts of Defendant Riess.

## FIFTH CAUSE OF ACTION

### *Consortium Claim*

38. Plaintiffs incorporate all facts and allegations above into this cause of action by reference.

39. Plaintiffs Jeffrey Gizzi and Kerry Gizzi were married at the time of the incident, and remain married.

40. As a direct and proximate result of Defendants' negligence and statutory violations, Plaintiff-Wife, Kerry Gizzi, has been damaged and deprived of the society, comfort, companionship, services and consortium of her husband, Plaintiff-Husband, Jeffrey Gizzi.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against all Defendants, in an amount in excess of $75,000.00, plus delay damages, costs, and other relief that this Honorable Court deems just under the circumstances.

**JURY TRIAL DEMANDED.**

    Respectfully submitted,
    EDGAR SNYDER & ASSOCIATES, LLC
    By:s/Christopher T. Hildebrandt
        Christopher T. Hildebrandt, Esquire
        Attorneys for Plaintiffs

#2291144